THIRD DEPARTMENT, AUGUST, 1989

(August 24, 1989)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EDWARD W. STEVENS, Appellant.—Weiss, J. Appeal from a judgment of the County Court of Albany County (Harris, J.), rendered October 30, 1986, upon a verdict convicting defendant of the crimes of murder in the second degree and manslaughter in the first degree.

The conviction in this case stems from the fatal stabbing of Edward Glenn during the early morning of January 19, 1986 in the City of Albany. Defendant, along with his brother Anthony Stevens and Henry Edmunds, were indicted for both intentional murder and felony murder of Glenn. Stevens, who indisputably inflicted the fatal wound, pleaded guilty. Following a severance, defendant was tried and convicted of manslaughter in the first degree, as a lesser included offense, and

felony murder. Defendant's primary contention on appeal is that the evidence was legally insufficient to substantiate either conviction. He further maintains that the introduction of certain photographs of decedent proved unduly prejudicial.

Viewed in a light most favorable to the prosecution (see, *People v Lewis,* 64 NY2d 1111, 1112), the relevant morning's events may be briefly described as follows. Glenn and a companion, David Baglione, encountered Stevens and Edmunds while driving in Albany. The parties proceeded to a location in the vicinity of First and Ontario Streets where it was agreed that Baglione and Glenn would purchase a quantity of cocaine. Stevens departed and walked to his nearby family home on Ontario Street. According to Baglione, Stevens returned minutes later, accompanied by defendant, with a small plastic "baggie" ostensibly containing "crystal speed". The purchasers sampled the substance and rejected it as inadequate. At some point during this transaction, Baglione paid Stevens $50. Stevens then left to exchange the crystal for cocaine. Baglione was not sure whether defendant accompanied him. Upon Stevens' return, a fight immediately broke out during which Glenn was fatally stabbed by Stevens. Defendant participated by grabbing Baglione around the neck, causing him to lose consciousness. Baglione awoke to find Glenn fatally wounded and all their valuables stolen. There was further evidence that the proceeds were distributed among the three assailants. For his part, defendant denied any awareness of the drug transaction until he came upon the fight and interceded on Stevens' behalf.

Given the above scenario, defendant's challenge to the manslaughter conviction is well founded. Having proceeded against defendant on a theory of accessorial liability, the prosecution was required to demonstrate that he acted with the mental culpability necessary to commit the crime charged (see, Penal Law § 20.00; *People v Nieves,* 135 AD2d 579, 580, *lv denied* 71 NY2d 1031). In our view, the record fails to demonstrate that defendant participated in the described altercation with a specific intent to cause serious physical injury to Glenn (see, Penal Law § 125.20 [1]). There is no evidence that defendant carried a weapon or was aware that Stevens intended to use a knife. Accordingly, we find the evidence legally insufficient to sustain the jury verdict of first degree manslaughter (see, *People v Aponte,* 135 AD2d 544, 545, *lv denied* 71 NY2d 892; *People v Bray,* 99 AD2d 470), or any other lesser included offense of murder in the second degree.

We reach a different conclusion with respect to the felony

murder conviction. A felony murder occurs when a person, acting alone or in concert with others, commits or attempts to commit a robbery and "in the course of and in furtherance of such crime or of immediate flight therefrom, he, or another participant * * * causes the death of a person other than one of the participants" (Penal Law § 125.25 [3]; *see, People v Gladman,* 41 NY2d 123, 125). The pertinent inquiry here is not whether defendant intended to kill Glenn, but whether he acted with a specific intent to commit a robbery in concert with the other perpetrators *(see, People v Gladman, supra,* at 125; *People v Credell,* 131 AD2d 774, 775, *lv denied* 70 NY2d 799). In making this assessment, the intent of one codefendant may not be imputed to the others *(see, People v La Belle,* 18 NY2d 405; *People v Morales,* 130 AD2d 366, 367). Given Baglione's description of an unprovoked, precipitous attack coupled with a comprehensive theft, we find the jury could readily infer that defendant was a knowing and active accomplice in the robbery *(see, People v Paul,* 133 AD2d 711, 712, *lv denied* 70 NY2d 935). Defendant's explanation that he merely happened to come upon the fight was obviously discredited by the jury *(see, People v Roundtree,* 140 AD2d 884, *lv denied* 73 NY2d 790). Accordingly, defendant's challenge to the felony murder conviction is rejected.

We further conclude that County Court did not abuse its discretion in authorizing the admission of certain undeniably gruesome black and white photographs depicting Glenn after the attack and during the autopsy *(see, People v Winchell,* 98 AD2d 838, 840, *affd* 64 NY2d 826). Since these photos were relevant to the crucial question of whether defendant acted with an intent to occasion serious physical injury, we cannot agree that the sole purpose of admission was "to arouse the emotions of the jury and to prejudice the defendant" *(People v Pobliner,* 32 NY2d 356, 370, *cert denied* 416 US 905). The portrait of Glenn should not have been included among these photos *(see, People v Winchell, supra,* at 840), but we find any resulting prejudice essentially harmless.

Judgment modified, on the law, by reversing the conviction for the crime of manslaughter in the first degree and dismissing the first count of the indictment, and, as so modified, affirmed. Mahoney, P. J., Kane, Weiss and Levine, JJ., concur.

Harvey, J., concurs in part and dissents in part in a memorandum. Harvey, J. (concurring in part and dissenting in part). I concur with the majority's conclusion that the manslaughter conviction should be reversed but otherwise I respectfully dissent. In my view, there was insufficient evidence

to prove beyond a reasonable doubt that this defendant intended to commit the crime of robbery. The jury, obviously, came to the conclusion that there was sufficient evidence and the majority of this court agrees. There is no point in discussing that issue further.

What does trouble me is whether the conduct of the trial prejudiced defendant to the extent that an unfair application of the law was made by the jury. The admission into evidence of a series of photographs beginning with an irrelevant snapshot of decedent taken while he was alive and in good health (see, People v Winchell, 98 AD2d 838, 840, affd 64 NY2d 826), followed by gory photographs of the body after the stabbing and during the autopsy, was clearly an abuse of County Court's discretion. The sole purpose for the admission of these photographs could only have been to influence the jury and prejudice defendant (see, People v Pobliner, 32 NY2d 356, 370, cert denied 416 US 905; People v Mercado, 120 AD2d 619, 620).

The prosecution's argument in support of the admission of the photographs is not persuasive. No issue was raised at the trial as to the fact that Edward Glenn died as a result of a knife wound to the heart inflicted by defendant's brother, who has pleaded guilty to that crime. The stab wound was described with particularity by the prosecution's expert witness and defendant did not contest any aspect of that testimony. Consequently, the exact nature and extent of the victim's injuries, as depicted in the autopsy photographs and the photographs taken at the crime scene, was not relevant or material to the elements of the crimes charged or necessary to disprove any defense (cf., People v Cuffee, 112 AD2d 545, lv denied 66 NY2d 762; People v Millson, 93 AD2d 899; People v Arca, 72 AD2d 205; see, People v Medina, 120 AD2d 749, lv denied 68 NY2d 915).

The majority express the view that the photographs depicting, for example, a ruler protruding from Glenn's torso showing the depth of the stab wound was necessary to show whether defendant acted with the intent to commit serious physical injury. However, such evidence could only serve to prove the intent of defendant's brother Anthony Stevens to kill Glenn, an intent that could not be imputed to defendant (see, e.g., People v La Belle, 18 NY2d 405, 413; People v Morales, 130 AD2d 366, 367).

County Court had an opportunity to permit the laying of the groundwork for introduction of the photographs and delay a decision as to admissibility until after all proof had been

completed. At that time it was clearly evident that the admission of the photographs was completely unnecessary and the jury would not have viewed them.

It is my firm belief that if there was sufficient circumstantial proof to establish defendant's intent, that proof was so thin that the photographs could have played a most important role in the jury's determination. The photographs, when combined with the hearsay testimony describing an alleged plan to rob the victims by defendant and Anthony Stevens given by a fellow inmate of Stevens, bolstered the very fragmentary and contradictory testimony of the chief prosecution witness, David Baglione. Although County Court charged that the inmate's testimony was only relevant to the credibility of the testimony given by Stevens, it would be naive to conclude that it was not accepted by the jury as proof of an intent to rob on the part of defendant. This would be particularly likely assuming that a juror's mind was already inflamed by the gory photographs.

Considering the less than overwhelming proof that defendant intended to commit the predicate felony of robbery, in my view the above-mentioned errors as well as others do not lend themselves to a harmless error analysis *(see, People v Crimmins,* 36 NY2d 230, 241). Thus, assuming sufficient evidence was adduced to support the felony murder conviction, a new trial should still be ordered.